OPINION
{¶ 1} Appellant, Jude T. Cauwenbergh ("Cauwenbergh"), appeals from the judgment entry of the Ashtabula County Common Pleas Court dated February 1, 2006. The judgment entry ordered that a previous ex parte civil protection order be continued in effect.
 {¶ 2} Appellee, Tracy A. Cauwenbergh ("appellee"), filed a petition for an ex parte domestic violence civil protection order on November 21, 2005. At the time, *Page 2 
divorce proceedings were pending between Cauwenbergh and appellee. The trial court entered an ex parte civil protection order that same day. Thereafter, Cauwenbergh was to have no contact with appellee, except that he was permitted to pick up the parties' child at a mutually agreeable location for purposes of visitation.
 {¶ 3} The affidavit attached to appellee's petition alleged that "on or about October 7, 2005, [Cauwenbergh] physically struck, assaulted and harmed [appellee] while [their four-and-one-half-year-old child] was in [appellee's] arms."
 {¶ 4} The trial court conducted an evidentiary hearing on January 23, 2006, pursuant to R.C. 3113.31 (D)(2).
 {¶ 5} Following the hearing, the trial court entered a judgment entry continuing the ex parte civil protection order. The judgment entry was dated February 1, 2006. Though the statute provides that the civil protection order could be effective for up to five years, the trial court stated that the entry would be effective up through June 1, 2006. The court also ordered appellee to "submit a judgment entry setting forth the conditions of the [civil protection order]."
 {¶ 6} Cauwenbergh timely filed an appeal to this court, raising two assignments of error. Appellee has not filed a brief in response to that of Cauwenbergh. We shall first consider the second assignment of error, which is as follows:
 {¶ 7} "The petitioner-appellee did not meet her burden of proof to establish domestic violence."
 {¶ 8} As a preliminary matter, we shall address the finality of the trial court's order inasmuch as it provides that appellee "shall submit a judgment entry setting forth the conditions of the [civil protection order]." *Page 3 
 {¶ 9} Our appellate jurisdiction extends only to final orders from trial courts.[1] We note that, pursuant to R.C. 3113.31(G), the granting of a civil protection order is a final, appealable order.[2]
 {¶ 10} Though "[a] judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order,"[3] the judgment entry in this case that calls for a further judgment entry setting forth the conditions of the civil protection order can be explained by the record and does satisfy the final order requirement.
 {¶ 11} Prior to the full hearing on the civil protection order, the parties had submitted to mediation to work out a parenting plan. In directing the appellee to submit a judgment entry setting forth the conditions of the civil protection order, the trial court was encouraging the parties to continue with mediation on the subject of their parenting plan. As stated by the trial court at the conclusion of the hearing:
 {¶ 12} "I would encourage the parties to continue with the mediation that has gone on with the parenting plan. I know that it is not quite there yet. I don't believe it is, but please continue with that."
 {¶ 13} Therefore, when the trial court ordered appellee to submit a judgment entry to reflect the conditions of the civil protection order, it was contemplating that the mediation process would result in negotiated terms in the parenting plan that, in turn, could be incorporated as conditions in the civil protection order. This is a different *Page 4 
situation from that where "a document in the nature of a decision, opinion, or ruling * * * directs the prevailing party to prepare a journal entry consistent with the court's reasoning [which] is not a final order."[4] In this case, a full hearing was conducted pursuant to R.C.3113.31(D)(2) and a final judgment entry granting a civil protection order (which continued the original ex parte order) was issued. Whether appellee ever submits a subsequent judgment entry to set forth the conditions of the civil protection order, such a subsequent entry does not vitiate the fact that the trial court issued a civil protection order on February 1, 2006. Should Cauwenbergh violate the order, he is subject to criminal prosecution and penalties.[5] Thus, we hold that the trial court's judgment entry satisfies the requirement of R.C.2505.02(B)(2), inasmuch as it is an order that affects a substantial right in a special proceeding.
 {¶ 14} An additional preliminary matter concerns whether the order that was set to expire on June 1, 2006 is now moot.
 {¶ 15} The Supreme Court of Ohio has established an exception to the mootness doctrine when issues are capable of repetition, yet evading review. As explained by that court:
 {¶ 16} "This exception applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[6] *Page 5 
 {¶ 17} In this case, the duration of the civil protection order was four months, which is too short a time for it to be reviewed by this court. Furthermore, the docket of this case in the trial court shows that appellee has filed for an extension of the civil protection order, so that Cauwenbergh will be subject to the same action again.
 {¶ 18} Specifically with respect to civil protection orders, the Supreme Court of Connecticut has found that the majority of states have held that such orders are not rendered moot by their expiration, either because of the collateral consequences caused by such orders, or because they are capable of repetition, yet evading review.[7] The collateral consequences can include the effect on one's credit rating, the ability to drive certain vehicles, the ability to obtain directors-officers liability insurance, the ability to obtain a weapons permit, the ability to obtain employment, and the filing of the order in a national registry that is enforceable in all 50 states.[8] We conclude that the majority view on this issue is the better view.
 {¶ 19} Therefore, the judgment entry that fixed the expiration of the civil protection order at June 1, 2006 is not moot.
 {¶ 20} The burden of proof in the trial court upon a petitioner for a civil protection order is by a preponderance of the evidence.[9]
 {¶ 21} This court has previously stated that the standard of review from the granting of civil protection orders is abuse of discretion: *Page 6 
 {¶ 22} "The decision to issue a civil protection order lies within the sound discretion of the trial court.[10] Absent an abuse of that discretion, a reviewing court will not disturb the trial court's judgment.[11] The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'[12]"[13]
 {¶ 23} In this first assignment of error, Cauwenbergh argues that appellee did not prove the elements of domestic violence. Under R.C.3113.31(E)(1), a trial court may grant a civil protection order where the petitioner has shown, by a preponderance of the evidence, that the petitioner, or the petitioner's family or household members, are in danger of domestic violence.[14]
 {¶ 24} "Domestic violence" is defined as follows:
 {¶ 25} "[T]he occurrence of one or more of the following acts against a family or household member:
 {¶ 26} "(a) Attempting to cause or recklessly causing bodily injury;
 {¶ 27} "(b) Placing another person by the threat of force in fear of imminent serious physical harm[.] * * *
 {¶ 28} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section2151.031 of the Revised Code."[15] *Page 7 
 {¶ 29} The trial court made a finding that the incident of October 7, 2005 was an "isolated incident," and that, based on her testimony at the ex parte hearing and the hearing on January 23, 2006, appellee "has met the burden of continuing her Domestic Violence Civil Protection Order." The trial court also found that she was "fearful of her safety, as well as that of her son, Ian."
 {¶ 30} Though no specific finding was made that Cauwenbergh attempted to cause bodily injury to appellee, that he placed appellee in fear of imminent serious physical harm, or that he committed an act of abuse against their child, appellee's testimony at the hearing on January 23, 2006 supports the trial court's ultimate finding. That is, the act of pushing appellee, who had their child in her arms at the time, constituted domestic violence insofar as it attempted to cause bodily injury to appellee. As stated by Judge Cooney of the Eighth Appellate District, "[T]he act of pushing can suffice."[16]
 {¶ 31} Appellee testified on direct examination as follows:
 {¶ 32} "[Appellee:] [H]e grabbed me and spun me around and even more heatedly right in my face asked me the same question, and I said, `You have two seconds to let me go.' And he pushed me against the wall with my son in my arms.
 {¶ 33} "[Attorney:] Were you concerned for your safety and welfare?
 {¶ 34} "[Appellee:] Yes, I was.
 {¶ 35} "[Attorney:] Were you concerned for the safety and welfare of your son?
 {¶ 36} "[Appellee:] More so than myself.
 {¶ 37} "[Attorney:] Were you scared, ma'am? *Page 8 
 {¶ 38} "[Appellee:] Yes.
 {¶ 39} "[Attorney:] Were you scared he was going to injure you?
 {¶ 40} "[Appellee:] Yes. At that point in time, yes."
 {¶ 41} Thus, the testimony of appellee regarding the incident of October 7, 2005, that she was pushed by Cauwenbergh, that she was concerned for her safety, and that she feared that she was going to be injured, supports the finding of the trial court that appellee had met her burden of proof, warranting the trial court to issue a civil protection order. No abuse of discretion was committed by the trial court in continuing the civil protection order.
 {¶ 42} The second assignment of error is without merit.
 {¶ 43} Cauwenbergh's first assignment of error is as follows:
 {¶ 44} "The trial court committed prejudicial error in striking the testimony of Debra Damiano."
 {¶ 45} The standard of review where the trial court has struck in-court testimony is whether the trial court committed an abuse of discretion.
 {¶ 46} "The admission or exclusion of evidence by the trial court will not be reversed unless there has been a clear and prejudicial abuse of discretion.[17]"[18]
 {¶ 47} Further, under Evid.R. 103(A):
 {¶ 48} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and *Page 9 
 {¶ 49} "* * *
 {¶ 50} "(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination."
 {¶ 51} Debra Damiano testified on direct examination pursuant to a subpoena at the full hearing on January 23, 2006. Thus, the substance of her testimony was made known to the trial court.
 {¶ 52} Debra Damiano testified that she had been a next-door neighbor to the Cauwenberghs and described them as very close friends. She often cared for their son, Ian. She had a conversation with appellee on November 21, 2005, the day the trial court issued an ex parte civil protection order, and stated to appellee that she was surprised by the court's action. When asked on direct examination why she was surprised, Damiano stated, "[b]ecause Jude [Cauwenbergh] wouldn't hurt anybody." When asked by appellee's attorney whether she had ever seen Cauwenbergh in a hostile or an aroused mood, she answered in the negative. When further asked about her November 21, 2005 conversation with appellee and whether appellee stated that she was in fear of Cauwenbergh, Damiano testified as follows:
 {¶ 53} "[Damiano:] She said she wasn't, no. She said she could handle him.
 {¶ 54} "[Attorney for Cauwenbergh:] Did she ever state that she feared [Cauwenbergh's] contact with his son, Ian?
 {¶ 55} "[Attorney for appellee:] Objection.
 {¶ 56} "[Damiano:] No. *Page 10 
 {¶ 57} "[Court:] Answer can remain."
 {¶ 58} Thus, Damiano's testimony, before it was ordered stricken by the trial court, was to the effect that, in Damiano's opinion, Cauwenbergh was not a person prone to violence, that she never observed Cauwenbergh to be in a hostile mood, and that appellee was not in fear of Cauwenbergh.
 {¶ 59} At the beginning of her cross-examination, Damiano was asked if she had been subpoenaed to testify, to which she answered in the affirmative. At that point, appellee's attorney raised an objection and moved to strike her testimony because he had not received a copy of the subpoena pursuant to Civ.R. 45. The trial court sustained the objection and ordered her testimony stricken.
 {¶ 60} Cauwenbergh challenges the trial court's ruling with respect to striking the testimony of Debra Damiano and directs our attention to Civ.R. 45.
 {¶ 61} Civ.R. 45(A)(3) provides that a party on whose behalf a subpoena is issued under subparagraphs (A)(1)(b)(ii), (iii), (iv), or (v) must serve a copy on all other parties. However, where a subpoena is issued to a witness for the purpose of attending and giving testimony at trial, hearing, or a deposition, no copy need be furnished to the other party.[19] The other subparagraphs not here relevant pertain to a subpoena issued to produce documents or other tangible things, to permit inspection and copying of documents, to permit testing and sampling of tangible things, and to permit entry upon designated land.[20]
Therefore, argues Cauwenbergh, Debra Damiano's testimony should not have been stricken by the trial court due the failure of the attorney for Cauwenbergh to provide a copy of Damiano's subpoena to opposing counsel. *Page 11 
 {¶ 62} Cauwenbergh further argues that striking Damiano's testimony had the following effect:
 {¶ 63} "Said error was prejudicial where the testimony stricken goes to an element of domestic violence. It is prejudicial where the evidence is an admission by the [appellee] that she was not in fear of [Cauwenbergh]."
 {¶ 64} While we agree that the trial court's ruling regarding the exclusion of Damiano's testimony was erroneous, we do not agree that it went to an element of domestic violence, or that it was prejudicial to Cauwenbergh.
 {¶ 65} Putting Damiano's testimony in its most favorable light, it does not contradict appellee's testimony about the incident of November 21, 2005, specifically, that appellee was pushed by Cauwenbergh against the wall with her son in her arms and that she was in fear of being injured at that time. Therefore, contrary to Cauwenbergh's assertion, Damiano's testimony did not negate an element of domestic violence. It merely gave an overall impression of Cauwenbergh's general demeanor when dealing with Damiano, together with a statement about appellee's mental state sometime after the incident had occurred.
 {¶ 66} Further, the testimony of Damiano, inasmuch as it did not negate appellee's testimony concerning the incident of October 7, 2005, could not have affected a substantial right of Cauwenbergh because, as we have concluded in our analysis under assignment of error number two, the trial court was correct in entering the civil protection order as it did. Thus, the error committed by the trial court was not prejudicial and constituted harmless error. *Page 12 
 {¶ 67} "Harmless errors, that is, errors which do not affect substantial rights, must be disregarded by the reviewing court. Civ.R. 61; R.C. 2309.59."[21]
 {¶ 68} The first assignment of error is without merit.
 {¶ 69} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur.
[1] R.C. 2505.02.
[2] Lamont v. Lamont, 11th Dist. No. 2004-G-2580, 2005-Ohio-2256, at ¶ 5, citing Palo v. Palo, 11th Dist. Nos. 2003-A-0049 and 2003-A-0058,2004-Ohio-5638, at ¶ 14, fn. 3.
[3] Bell v. Horton (2001), 142 Ohio App.3d 694, 696, citing ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86.
[4] (Citations omitted.) Vanest v. Pillsbury Co. (1997),124 Ohio App.3d 525, 533, fn. 4.
[5] R.C. 3113.31 (L)(1).
[6] (Citations omitted.) State ex rel. Calvary v. Upper Arlington
(2000), 89 Ohio St.3d 229, 231. See, also, Hughes v. Ohio Bur. of MotorVehicles (1997), 79 Ohio St.3d 305, 307.
[7] Putman v. Kennedy (2006), 279 Conn. 162, 173-174, 900 A.2d 1256,1263-1264.
[8] Smith-Lawler v. Lawler (2006), 97 Conn. App. 376, 381, fn. 5,904 A.2d 1235, 1239.
[9] Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus.
[10] Maglionico v. Maglionico (Nov. 9, 2001), 11th Dist. No. 2000-P-0115, 2001 Ohio App. LEXIS 5053, at *4, citing Deacon v.Landers (1990), 68 Ohio App.3d 26, 31, and Dybo v. Dybo (Nov. 5, 1999), 11th Dist. No. 98-G-2155, 1999 Ohio App. LEXIS 5230.
[11] Id.
[12] Blakemore v. Blakemore (1981), 5 Ohio St.3d 217, 219, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157.
[13] Lamont v. Lamont, 11th Dist. No. 2004-G-2580, 2005-Ohio-2256, at ¶ 9.
[14] Felton v. Felton, 79 Ohio St.3d 34, paragraph two of the syllabus, citing R.C. 3113.31(D).
[15] R.C. 3113.31(A)(1).
[16] State v. Clemence, 8th Dist. No. 81845, 2003-Ohio-3660, at ¶ 49 (Cooney, J., concurring). See, also, Ankenbruck v. Ankenbruck (Dec. 8, 2000), 11th Dist. No. 99-T-0144, 2000 Ohio App. LEXIS 5757, at *7.
[17] O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
[18] Sutphin v. Sutphin, 1st Dist. Nos. C-030747 and C-030773,2004-Ohio-6844, at ¶ 5.
[19] Civ.R. 45(A)(1)(b)(i).
[20] Civ.R. 45(A)(1)(b)(ii), (iii), (iv), and (v).
[21] Bond v. Bond, 2d Dist. No. 04CA8, 2004-Ohio-7253, at ¶ 15. *Page 1